CAL–MAINE FOODS, INC., Defendant
Below, Appellant,

v.

David PYLES, H. David Schneider, Twin
Valley Farms Exchange, Inc., Leon
Eshelman, Gary Eshelman, Valerie
Eshelman, Pamela Fredericks and
Terry Bixler, Plaintiffs Below, Appel-
lees.

No. 69,2004.

Supreme Court of Delaware.

Submitted: July 14, 2004.
Decided: Sept. 3, 2004.

Jesse A. Finkelstein, Esquire, Peter B.
Ladig, Esquire (argued), and Elizabeth C.
Tucker, Esquire, of Richards, Layton &
Finger, P.A., Wilmington, Delaware, for
Appellant.

Michael Hanrahan, Esquire, and Gary
F. Traynor, Esquire (argued), of Prickett,

Jones & Elliott, P.A., Wilmington, Delaware, for Appellees.

Before STEELE, Chief Justice, HOLLAND and BERGER, Justices.

BERGER, Justice.

In this appeal, we consider whether the Court of Chancery properly applied settled legal principles in awarding attorneys' fees to stockholders after their breach of fiduciary duty claims were mooted by the company's decision to abandon the contested transaction. The trial court found that the stockholders' suits were meritorious when filed and that the company failed to rebut the presumption that the litigation had some causal relationship to the company's decision to terminate the transaction. As both of those findings are supported by the record, and the amount awarded is not unreasonable, we affirm the Court of Chancery's decision.

Factual and Procedural Background

On August 18, 2003, Cal–Maine Foods, Inc., the largest producer and distributor of shell eggs in the United States, announced a going-private transaction at $7.35 per share. On the last trading day before that announcement, Cal–Maine's common stock closed at $7.56 per share. One week later, Cal–Maine stockholders filed a complaint alleging breach of fiduciary duty and seeking injunctive relief. Among other things, the complaint alleged that the proposed price was unfair because it failed to reflect rising egg prices and Cal–Maine's improved performance.

Cal–Maine had not filed its proxy materials with the Securities and Exchange Commission, nor had it set a date for the stockholders' meeting, when the court held its first scheduling conference on September 2, 2003. Nonetheless, the court granted the stockholders' motion for expedited proceedings and scheduled the preliminary injunction hearing for October 1, 2003, based on the company's October 10th target date for its stockholders' meeting. The stockholders proceeded with discovery and prepared to depose the Special Committee's financial advisor, among others.

On October 6, 2003, Cal–Maine announced its very favorable financial results for the quarter ended August 30, 2003. The next day, the SEC sent Cal–Maine a Comment Letter raising numerous questions and possible revisions to the proxy materials. In light of the Comment Letter, the preliminary injunction hearing date was postponed—first until November 20, 2003, and later, until an unspecified date in January 2004.

From October 13, 2003, through October 29, 2003, the Special Committee considered higher cash-out prices that might be acceptable to the stockholders. The parties did not reach an agreement, however, and on November 6, 2003, Cal–Maine abandoned the proposed transaction. The company's directors made that decision because: (i) the Special Committee's financial advisor had withdrawn its fairness opinion due to market volatility; and (ii) in their view, the transaction price would be too high. Cal–Maine stock closed at $11.00 that day, and closed as high as $43.59 before the end of the year.

On November 21, 2003, the stockholders filed a motion for attorneys' fees and expenses. The Court of Chancery awarded $800,000 in fees and $31,617.23 in expenses, finding that the decision to abandon the transaction was causally related to the litigation, and that the abandonment provided a significant benefit to the stockholders. This appeal followed.

Discussion

The law governing an award of attorneys' fees in a mooted class action is

settled. Under the "common corporate benefit" doctrine:

> [A] litigant who confers a common monetary benefit upon an ascertainable stockholder class is entitled to an award of counsel fees and expenses for its efforts in creating the benefit....

> \* \* \*

> [T]o be entitled to an award of fees under the corporate benefit doctrine, an applicant must show ... that:

> (1) the suit was meritorious when filed;

> (2) the action producing benefit to the corporation was taken by the defendants before a judicial resolution was achieved; and

> (3) the resulting corporate benefit was causally related to the lawsuit.[1]

Because Cal–Maine mooted the stockholders' claims by abandoning the transaction, it has the burden to show that "no causal connection existed between the initiation of the suit and any later benefit to the shareholders."[2] In other words, Cal–Maine must demonstrate that the stockholders' suit "did not in any way cause [its] action."[3]

Cal–Maine disputes only one element of the fee award formula—the causal connection between its decision to abandon the transaction and the stockholders' litigation. Cal–Maine argues that it was the "unexpected" rise in the price of eggs and the resulting increase in the price of its stock that made the transaction untenable. With the stock trading in the range of $11 per share in early November, and no fairness opinion, the going-private transaction at $7.35 per share simply was not viable. Thus, according to Cal–Maine, external factors were entirely responsible for its decision to abandon the transaction.

■ The Court of Chancery, however, reached a different conclusion. Egg prices were rising rapidly in August 2003, and Cal–Maine's insiders told their lenders that the egg market was booming. Indeed, the market price was higher than the going-private price on the day it was announced. From these facts, the trial court determined that the rise in Cal–Maine's stock price was not totally unexpected. In addition, the court found that several of the most substantive comments in the SEC's Comment Letter tracked the claims in the stockholders' complaint. Finally, the court found that the Special Committee's willingness to negotiate for a higher price in October was influenced by the pendency of a preliminary injunction hearing. In sum, the Court of Chancery did not accept Cal–Maine's claim that the litigation had nothing to do with its decision to abandon the transaction. As a result, it found that the presumption of a causal connection had not been overcome, and that the stockholders were entitled to an award of fees and expenses. Based on our review of the record, we are satisfied that the trial court's decision is supported by the evidence and must be upheld.

■ The second issue is whether the Court of Chancery abused its discretion in setting the amount of the award. The stockholders told the trial court that their efforts created a benefit of $8 million, representing the difference between the $7.35 transaction price and the $11.00 stock price on the day the transaction was abandoned. The Court of Chancery determined that the stockholders' litigation created a "substantial" benefit, although not

---

1. *United Vanguard Fund v. Takecare, Inc.*, 693 A.2d 1076, 1079 (Del.1997).

2. *Id.* at 1080.

3. *Allied Artists Pictures Corp. v. Baron*, 413 A.2d 876, 880 (Del.1980).

one that was readily quantifiable. After considering the risks of litigation and the benefit achieved, the trial court awarded $800,000 plus expenses. That figure represented approximately three times the normal hourly rates for the firms involved, a premium that the court found reasonable. We are satisfied that the Court of Chancery acted well within its discretion in setting the amount of the award.

Conclusion

Based on the foregoing, the judgment of the Court of Chancery is affirmed.