IN RE WACHOVIA SHAREHOLDERS LITIGATION

No. COA04-402

(Filed 18 January 2005)

**Costs— attorney fees—equitable exception—corporate benefit doctrine—common benefit doctrine**

 The special business court did not have legal authority to award attorney fees to shareholders of Wachovia Corporation for their lawsuit brought against Wachovia where the successful product of the lawsuit provided some alleged corporate benefit to fellow shareholders by obtaining the invalidation of a non-termination provision in Wachovia's agreement to merge with First Union, because: (1) in regard to the corporate benefit doctrine, the Court of Appeals cannot extend equitable exceptions in this state's jurisprudence where a prior panel of this Court has chosen not to do so; (2) assuming arguendo that the common benefit doctrine is a recognized equitable extension of awarding attorney fees in North Carolina, the facts of this case do not fall within the purview of the doctrine when plaintiffs have not demonstrated a dominating reason or exceptional circumstance, nor did they show any specific pecuniary benefit to the shareholders stemming from the business court's order invalidating the non-termination provision of the merger agreement; and (3) Delaware's application of the doctrine seems to require some indicia of monetary benefit, and the business court found that there was not even an increase in the stock price attributable to any action by plaintiffs' counsel, nor did any subsequent bidder appear after the non-termination provision was deemed invalid.

 Appeal by defendant Wachovia Corporation from judgment entered 23 December 2003 by Judge Ben F. Tennille in Special Superior Court for Complex Business Cases. Heard in the Court of Appeals 22 October 2004.

 *Wilson & Iseman, L.L.P., by G. Gray Wilson; Abbey Gardy, L.L.P., by Stephen T. Rodd, for Wachovia Shareholder plaintiff appellees.*

 *Wilson & Iseman, L.L.P., by Linda L. Helms, for Wachovia Shareholder plaintiff appellees.*

*Robinson, Bradshaw & Hinson, P.A., by Robert W. Fuller; Bell, Davis & Pitt, P.A., by William K. Davis; Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by James T. Williams, Jr.; and Deputy General Counsel for Wachovia Corporation Francis C. Clark, for Wachovia Corporation defendant appellant.*

McCULLOUGH, Judge.

Arising from a complex business merger between Wachovia Corporation ("Wachovia") and First Union Corporation ("First Union"), this appeal raises a single question of law for our consideration. Did the special business court ("business court") have legal authority to award attorney's fees to shareholders of Wachovia Corporation ("plaintiffs") for their lawsuit brought against Wachovia, where the successful product of the lawsuit provided some alleged corporate benefit to fellow shareholders? Our following recitation of the facts is narrowed in scope to address this single issue of law.

On 15 April 2001, Wachovia and First Union announced their planned merger. Both were North Carolina corporations prior to their merger, as is the merged entity. Their merger agreement included two contested provisions, known in merger jargon as "deal protection devices": a cross option provision, and a non-termination provision. Under the cross-option provision, if the Wachovia/First Union merger failed to close, and one partner merged with a third entity within eighteen (18) months, the remaining partner was potentially entitled to what the business court referred to as a "$780 million break-up fee." Under the non-termination provision, Wachovia and First Union agreed their merger agreement would not terminate until January of 2002 even if either of their shareholders failed to approve the merger in the initial vote.

A number of suits were filed by shareholders of Wachovia seeking to block the merger by challenging the cross-option provision and the non-termination provision of the merger agreement ("the shareholder suits"). These suits alleged that the Board of Directors of Wachovia had breached its statutory "fiduciary" duties under N.C. Gen. Stat. § 55-8-30 (2003) by approving these provisions. Also stemming from the merger, Suntrust Banks, Inc. ("Suntrust") made a hostile bid on Wachovia. First Union filed suit against Suntrust ("the Suntrust suit"). Both the Suntrust suit and the shareholder suits were assigned to the business court, and the cases were consolidated for discovery and other purposes.

**IN RE WACHOVIA SHAREHOLDERS LITIGATION**

[168 N.C. App. 135 (2005)]

On 20 July 2001, the business court issued an order holding that the cross-option was a valid provision, but that the non-termination provision impermissibly restricted the ability of Wachovia's Board to consider merger partners other than First Union and was thus invalid and unenforceable. The business court determined that the non-termination provision cornered Wachovia's Board of Directors into the position of either breaching their fiduciary duty or breaching the merger agreement if a better merger offer came along during the agreement's dormancy. Additionally, the business court found the non-termination provision to be coercive upon the shareholders, stating: "[t]he longer the option is effective, the more likely shareholders are to vote for the bird in the hand."

Pursuant to this order, plaintiffs petitioned the business court for attorney's fees. The business court postured plaintiffs' petition upon the following facts and legal considerations:

(53) The Court next turns to the fee issues in the class action litigation. In those cases, because the parties agreed to a consent dismissal of the cases as moot the Court is required to determine only the fee request which is strenuously opposed by defendants.

(54) In this class action no common fund was created. There is no pool of money from which to pay attorney fees and no money to be distributed to shareholders. In this instance there was not even an increase in the stock price attributable to any action by plaintiffs' counsel, nor did any subsequent bidder appear after the Wachovia sleeping pill [the non-termination provision] was invalidated.

(55) Under those circumstances, the fee request raises four issues for consideration by the Court.

(56) First, will North Carolina recognize a "corporate benefit" theory analogous to the common fund theory and award attorney fees where a common benefit is provided in merger and acquisition litigation?

(57) Second, was there a common benefit provided by the litigation in this case?

(58) Third, what standard should the Court apply in determining any fee award?

(59) Fourth, applying that standard, what would an appropriate fee award be in this case?

The business court answered the first question affirmatively, stating:

> North Carolina would be well served by following the majority rule and adopting the Delaware decision framework.
>
> Public policy, the legislative intent of N.C.G.S. § 57-7-46, and judicial economy and efficiency all dictate that the common law recognize that shareholders who file class actions in merger and acquisition cases and produce a real corporate demonstrable benefit for shareholders should be permitted to apply for attorney fees and expenses.

Upon this determination, plaintiffs were awarded $325,000 in attorney's fees and $36,000 for expenses.

We now address whether the business court, in making this determination, had authority to extend upon the equitable doctrines established in this state on non-statutory grounds for an award of attorney's fees.

Generally, attorney's fees are taxable as costs only as provided by statute. *Horner v. Chamber of Commerce*, 236 N.C. 96, 97, 72 S.E.2d 21, 22 (1952). However, our Supreme Court has recognized at least one equitable exception to the general rule known as the "common fund" doctrine:

> The rule is well established that a court of equity, or a court in the exercise of equitable jurisdiction, may in its discretion, and without statutory authorization, order an allowance for attorney fees to a litigant who at his own expense has maintained a successful suit for the preservation, protection, or increase of a common fund or of common property, or who has created at his own expense or brought into court a fund which others may share with him.

*Id.* at 97-98, 72 S.E.2d at 22; *see also*, *Bailey v. State of North Carolina*, 348 N.C. 130, 160, 500 S.E.2d 54, 71 (1998), *appeal dismissed*, 353 N.C. 142, 540 S.E.2d 313 (2000); *Taylor v. City of Lenoir*, 148 N.C. App. 269, 275-79, 558 S.E.2d 242, 247-49, *disc. review denied*, 355 N.C. 500, 564 S.E.2d 235 (2002). A separate and distinct equitable doctrine of awarding attorney's fees, where no such common fund is created, is known in other jurisdictions as the common "corporate benefit." This doctrine is most clearly expressed in Delaware common law, providing the following elements:

[A] litigant who confers a common monetary benefit upon an ascertainable stockholder class is entitled to an award of counsel fees and expenses for its efforts in creating the benefit . . . . To be entitled to an award of fees under the corporate benefit doctrine, an applicant must show . . . that:

(1) the suit was meritorious when filed;

(2) the action producing benefit to the corporation was taken by the defendants before a judicial resolution was achieved; and

(3) the resulting corporate benefit was causally related to the lawsuit.

*Cal-Maine Foods, Inc. v. Pyles*, 858 A.2d 927, 927 (Del. 2004) (quoting *United Vanguard Fund v. Takecare, Inc.*, 693 A.2d 1076, 1079 (Del. 1997)).

In the case at bar, the business court "adopt[ed] the Delaware decisional framework" for the "corporate benefit" doctrine and awarded attorney's fee thereunder. *See Energy Investors Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331, 334, 525 S.E.2d 441, 443 (2000) ("the Chancery Court of Delaware[] [is] generally recognized as an authority in the interpretation of business law[.]"). Plaintiffs contend the business court had authority to do so based on jurisprudence of this State's recognition that equity requires "allowance [of attorney's fees] [be] made in certain equity cases prosecuted in behalf of a class, when the successful prosecution of the cause inures to the benefit of the members of the class." *Rider v. Lenoir County*, 238 N.C. 632, 635, 78 S.E.2d 745, 747 (1953). Plaintiffs would have our Court decide this case as a matter of first impression, and adopt the common "corporate benefit" doctrine of attorney's fees based upon the above stated principles of equity, the application of the doctrine in numerous state and federal jurisdictions, and a number of policy concerns as specified in the business court's order.

Defendant, in seeking to reverse the business court's award, alleges that, upon similar facts to those at bar, we have already chosen not to adopt the common "corporate benefit" doctrine, and we are therefore bound by a prior panel of our Court.

In *Madden v. Chase*, 84 N.C. App. 289, 292, 352 S.E.2d 456, 458 *disc. review denied*, 320 N.C. 169, 358 S.E.2d 53 (1987), we denied an award of attorney's fees sought by a group of plaintiffs filing suit to enjoin a "going private" merger. The plaintiffs in that case believed

the price per share being offered to the two private purchasers was undervalued. After the case had been pending for approximately five months, the investment banking firm which had initially appraised the shares for the directors re-evaluated its opinion and withdrew it. Thereafter, the "going private" merger was abandoned and the public shareholders maintained their shares, mooting the plaintiffs' claims. Pursuant to the plaintiffs' petition for attorney's fees, we found that North Carolina had not recognized an applicable equitable exception raised by these facts for overriding the general rule requiring statutory authority to award attorney's fees. *Id.* In doing so, we reviewed the very same cases plaintiff now requests we consider for awarding attorney's fees pursuant to common "corporate benefit." *See Rider*, 238 N.C. 632, 78 S.E.2d 745; and *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 24 L. Ed. 2d 593 (1970).

In the case at bar, the business court found *Madden* was distinguishable, and the facts not appropriate for application of the "common benefit" doctrine of attorney's fees. The business court stated:

> *Madden* involved a going private transaction which was abandoned after suit was filed. It was never certified as a class action and did not deal with the invalidation of deal protection devices in merger agreements between publicly held companies. It is apparent from the short opinion and the cases cited as precedent by the court that the plaintiff's claims were treated as individual claims related to the plaintiff's stock.

Therefore, the business court found our holding in *Madden* did not preclude its adoption of the common "corporate benefit" theory, asserting that "[t]he appellate courts of North Carolina have never been called upon to rule on th[is] question[.]"

We believe the common "corporate benefit" doctrine was applicable in *Madden,* despite the nuances focused on by the business court. Therefore, we conclude that *Madden* did call upon our Court to rule on the question of the common "corporate benefit" doctrine, and we refrained from its incorporation into North Carolina common law.

Under Delaware law, as applied by the business court in this case, the common benefit doctrine awards "*a litigant who confers a common monetary benefit upon an ascertainable stockholder class.*" *United Vanguard Fund*, 693 A.2d at 1079 (emphasis added). It does not require more than one litigant or that there be a certified class of

litigants, nor does it limit itself to how the benefit is conferred, whether by invalidating deal protection devices or otherwise. Furthermore, the doctrine in no way considers the intent of the litigant bringing the suit, be it to protect their own investment, create a common benefit, or both. The doctrine focuses on who *receives* the benefit, and whether the benefit is causally related to a meritorious action filed before the issue had been resolved. *Id.; see also, Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 265, 44 L. Ed. 2d 141, 158, n.39 (1975) (summarizing that in common benefit cases the classes of beneficiaries are small in number and easily ascertainable; the benefits can be traced with some accuracy, and there is reason for confidence that the costs can be shifted with some exactitude to those benefitting).

Shedding relevant light on the applicability of the common "corporate benefit" doctrine to the facts of *Madden* is a recent opinion by the Delaware Supreme Court. In *Cal-Maine Foods, Inc. v. Pyles*, Cal-Maine Foods, Inc., the largest producer and distributor of shell eggs in the United States, announced a going-private transaction at $7.35 per share. *Id.* However, on its last trading day before the announcement, Cal-Maine's common stock closed at $7.56 per share. Stockholders filed a complaint alleging breach of fiduciary duty and seeking injunctive relief. *Id.* Among its claims, the complaint alleged that the proposed price was unfair because it failed to reflect rising egg prices and Cal-Maine's improved performance. *Id.* While the case was pending, the going private transaction was abandoned. The Chancery Court, finding the stockholders' claims causally related to the transaction's abandonment, awarded the stockholders' attorney's fees under the "common benefit" theory. And, upon these facts, none of which we find materially distinct from *Madden*, the Delaware Supreme Court affirmed.

While noting the reasoned policy argument offered by the business court in its opinion and with due respect the breadth of support the petitioner found in other jurisdictions which have applied the common benefit theory, our Court does not possess the power to extend equitable exceptions in this state's jurisprudence where a prior panel of this Court has chosen not to do so. In light of the elements of the common "corporate benefit" theory as provided in Delaware's respected corporate jurisprudence, and application of those elements in *Cal-Maine Foods, Inc.*, by the Delaware Court of Chancery, we believe the plaintiff's petition for attorney's fees is governed by *Madden* and precludes any award. Lastly, assuming

*arguendo* that the common benefit doctrine is a recognized equitable extension of awarding attorney's fees in North Carolina, we are not convinced the facts of this case fall within the purview of the doctrine. Plaintiffs rely on *Brewer v. School Board of City of Norfolk*, 456 F.2d 943 (4th Cir. 1972) for the proposition that the 4th Circuit has adopted the common benefit theory of awarding attorney's fees where no monetary benefit has been conferred. However, the *Brewer* court awarded attorney's fees based on the following:

> There is . . . a unique feature of this case, involving at least a quasi-application of the "common fund" doctrine . . . . The plaintiffs have by this appeal secured for the students of this school system an additional right, a right of direct *pecuniary* benefit . . . . It is true the right is not represented by a "common fund" and has not resulted in a monetary recovery, against which attorney's fees may be charged but, so far as the students affected are concerned, "the effect * * * is the same as though a fund were created." The students have secured a right worth approximately $60 per year to each of them. This *pecuniary* benefit to the students involved would, under normal circumstances, warrant the imposition of a charge against them for their proportionate share of a reasonable attorney's fee incurred in securing such *pecu-niary* benefit for them. It is not practical, however, to do this in this case and, too, to do so would defeat the basic purpose of the relief provided by the amendment in the decree, which was to secure for the student concerned transportation *without cost or deduction*. The only feasible solution in this peculiar situation would seem to lie in requiring the school district itself to supplement its provision of free transportation with payment of an appropriate attorney's fee to plaintiffs' attorneys for securing the addition of such a provision to the plan of desegregation. There are thus "dominating reasons" under the "exceptional circumstances" of this case to award attorney's fees for the services of plaintiffs' attorneys in securing for these students this *pecuniary* benefit.

*Brewer*, 456 F.2d at 948 (citations omitted). In the case at bar, plaintiffs have demonstrated no similar "dominating reason" or "exceptional circumstances," nor did they show any specific *pecuniary* benefit to the Wachovia shareholders stemming from the business court's order invalidating the non-termination provision of the merger agreement. Thus, no "effect of the suit is the same as though a [common] fund were created." *Id.* Moreover, Delaware's application of the doc-

**IN RE J.F.M. & T.J.B.**

[168 N.C. App. 143 (2005)]

trine seems to require some indicia of "monetary benefit." *United Vanguard Fund, Inc.*, 693 A.2d at 1079. The business court expressly found "there was not even an increase in the stock price attributable to any action by plaintiffs' counsel, nor did any subsequent bidder appear" after the non-termination provision was deemed invalid.

Based upon a close review of the records, briefs, and exhibits in this case, we reverse the business court's grant of attorney's fees.

Reversed and remanded.

Chief Judge MARTIN and Judge HUDSON concur.