IN THE COURT OF APPEALS OF NORTH CAROLINA

Nos. COA14-1201 and COA14-1083

Filed: 15 September 2015

Mecklenburg County, No. 08 CVS 22632

IRVING EHRENHAUS, On Behalf of Himself and All Others Similarly Situated, Plaintiff,

v.

JOHN D. BAKER, II, PETER C. BROWNING, JOHN T. CASTEEN, III, JERRY GITT, WILLIAM H. GOODWIN, JR., MARYELLEN C. HERRINGER, ROBERT A. INGRAM, DONALD M. JAMES, MACKEY J. MCDONALD, JOSEPH NEUBAUER, TIMOTHY D. PROCTOR, ERNEST S. RADY, VAN L. RICHEY, RUTH G. SHAW, LANTY L. SMITH, DONA DAVIS YOUNG, WACHOVIA CORPORATION and WELLS FARGO & COMPANY, Defendants.

---

Mecklenburg County, No. 08 CVS 22632

IRVING EHRENHAUS, On Behalf of Himself and All Others Similarly Situated, Plaintiff,

v.

JOHN D. BAKER, II; PETER C. BROWNING; JOHN T. CASTEEN, III; JERRY GITT; WILLIAM H. GOODWIN, JR.; MARYELLEN C. HERRINGER; ROBERT A. INGRAM; DONALD M. JAMES; MACKEY J. MCDONALD; JOSEPH NEUBAUER; TIMOTHY D. PROCTOR; ERNEST S. RADY; VAN I. RICHEY; RUTH G. SHAW; LANTY L. SMITH; DONA DAVIS YOUNG; and WELLS FARGO & COMPANY, Defendants.

Appeal by objectors Michael L. Robinson[1] and John H. Loughbridge, Jr. from order entered 25 March 2014 by Judge Calvin E. Murphy in Mecklenburg County Superior Court and appeal by plaintiff from order entered 16 July 2014 by Judge James L. Gale in Mecklenburg County Superior Court. Heard in the Court of Appeals 19 March 2015.

> *Greg Jones & Associates, P.A., by Gregory L. Jones, and Wolf Popper LLP, by Chet B. Waldman, pro hac vice, for plaintiff-appellant.*
>
> *Robinson, Bradshaw & Hinson, P.A., by Adam K. Doerr and Robert W. Fuller, for defendants-appellees.*
>
> *Michael L. Robinson and John H. Loughridge, Jr., pro se.*

DAVIS, Judge.

In this consolidated appeal from the class action that was filed concerning the merger between Wachovia Corporation ("Wachovia") and Wells Fargo & Company ("Wells Fargo"), Michael L. Robinson and John H. Loughridge, Jr. ("Objectors") appeal in COA14-1201 from the Honorable Calvin E. Murphy's 25 March 2014 order awarding Wolf Popper LLP ("Wolf Popper") $1,056,067.57 in attorneys' fees and expenses, contending that the award of legal fees and expenses is not supported by North Carolina law and must be vacated. In COA14-1083, Plaintiff appeals from

---

[1] On 11 August 2015, this Court granted Michael L. Robinson's motion to substitute himself — in his capacity as executor of the estate — for Objector Norwood Robinson, who died on 18 July 2015.

Judge James L. Gale's 16 July 2014 order dismissing his attempted cross-appeal from Judge Murphy's order, arguing that the defects in his notice of appeal were nonjurisdictional such that the dismissal of his appeal was improper. After careful review, we affirm Judge Murphy's order and dismiss Plaintiff's appeal of Judge Gale's order.

## Factual Background

This matter is before this Court for a second time. The facts surrounding this action are set out more fully in *Ehrenhaus v. Baker*, 216 N.C. App. 59, 717 S.E.2d 9 (2011), *appeal dismissed and disc. review denied*, 366 N.C. 420, 735 S.E.2d 332 (2012) ("*Ehrenhaus I*"), but are summarized in pertinent part as follows: In 2008, a national financial crisis ensued as a series of financial collapses eroded confidence in our nation's banking and mortgage institutions. Various events, including the United States government's decision to place the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation under government control and conservatorship on 7 September 2008, "culminated in a rapid decline in the public confidence in banks that held large positions in government-backed mortgage securities." *Id.* at 63, 717 S.E.2d at 13.

Wachovia, which in September 2008 was the fourth largest banking institution in the nation, was one such bank. It had acquired a substantial number of mortgages as a result of its 2007 purchase of Golden West Financial Corporation, the second

largest dedicated mortgage bank in the country at the time. Indeed, "[t]hese mortgage liabilities caused Wachovia's depositors and investors to lose confidence in that institution and a 'run' on the bank developed, causing the Federal Deposit Insurance Corporation ('FDIC') to inform Wachovia's corporate officers and the Wachovia board of directors . . . that Wachovia needed to merge with a solvent financial institution or be placed into receivership." *Id.* at 62, 717 S.E.2d at 12-13.

After several other potential mergers did not materialize, Wachovia's board of directors ("the Board") ultimately accepted a merger proposal advanced by Wells Fargo whereby Wells Fargo would acquire all of Wachovia's assets without government assistance. The agreement called for a separate share exchange between Wachovia and Wells Fargo "pursuant to which Wells Fargo would acquire ten newly issued shares of Wachovia Series M, Class A Preferred Stock, representing 39.9 percent of Wachovia's aggregate voting rights, including the right to vote on the approval of the proposed merger, in exchange for 1000 shares of Wells Fargo common stock." *Id.* at 64-65, 717 S.E.2d at 14.

Under the agreement, these newly issued, preferred shares of Wachovia stock would be subject to a "tail provision," meaning that the shares were not redeemable by Wachovia for 18 months following the shareholder vote on the merger — even if the merger was not effectuated. *Id.* at 65, 717 S.E.2d at 14. The agreement provided for a share exchange in which Wachovia's public shareholders would obtain 0.1991

shares of Wells Fargo common stock in exchange for each share of Wachovia common stock. *Id.* The agreement also included a "fiduciary out" provision that required the Board to submit the proposed merger for a vote even if the Board was no longer recommending it. *Id.* The Board voted unanimously to approve the proposed merger, and the Federal Reserve System's board of governors approved the merger shortly thereafter. *Id.* at 66, 717 S.E.2d at 15.

On 8 October 2008, Irving Ehrenhaus ("Plaintiff") filed this class action on behalf of Wachovia's shareholders of common stock — challenging the merger and asserting a breach of fiduciary duty claim against Wachovia, members of the Board, and Wells Fargo (collectively "Defendants"). In his complaint, Plaintiff alleged that (1) the share exchange providing Wells Fargo with 39.9% of the voting power for the merger "invalidly disenfranchised Wachovia shareholders"; (2) the tail provision was overly coercive because "it impeded the Board from seeking out other bidders for at least eighteen months after a shareholder vote rejecting the Merger"; (3) the exchange ratio contained in the merger agreement offered inadequate consideration to Wachovia shareholders in exchange for their shares; and (4) the fiduciary out provision was inadequate because the Board could not withdraw from the merger agreement if a superior proposal was offered but rather would be required to submit the Wells Fargo merger agreement to a vote despite the existence of the better offer. *Id.* In his lawsuit, Plaintiff sought to enjoin — or, alternatively, rescind — the

merger. The case was subsequently designated as a mandatory complex business case and assigned to the North Carolina Business Court.

On 15 October 2008, Plaintiff filed a motion for a preliminary injunction, requesting that the trial court invalidate the tail provision, the fiduciary out provision, and the share exchange provision of the merger agreement. The trial court granted partial preliminary injunctive relief, enjoining the tail provision based on its determination that this provision "would impede the Board in fulfilling its fiduciary duty to seek out merger partners in the event a potential suitor's overtures had been rejected." *Id.* at 67, 717 S.E.2d at 16. As a whole, however, the trial court concluded that the Board's approval of the Merger was "an informed decision, made in good faith, with an honest belief that the action was in the best interests of Wachovia and its shareholders" and was reasonable under the circumstances. *Id.*

Following the partial injunction, Plaintiff amended his original complaint to add allegations that Wachovia's proxy statement "contained material false and misleading statements and omitted material information related to the Merger." *Id.* at 67-68, 717 S.E.2d at 16. The parties began settlement negotiations shortly thereafter and entered into a memorandum of understanding ("MOU") containing an agreement to settle the action. The MOU required Wachovia to make additional disclosures relating to the omitted information that Plaintiff had referenced in his amended complaint. The MOU also provided that (1) Wells Fargo would pay the costs

associated with providing notice of the proposed settlement to the class members; (2) Wells Fargo would pay up to $1.975 million in attorneys' fees to class counsel; and (3) all causes of action against Defendants arising from the allegations contained in Plaintiff's amended complaint and related to the merger — excluding actions to enforce the merger and claims alleging violations of federal securities laws — would be released and discharged. *Id.* at 68, 717 S.E.2d at 16. The MOU allowed class counsel to conduct confirmatory discovery in order to ensure the fairness of the settlement. *Id.*

The merger was approved on 23 December 2008 by 76% of the votes entitled to be cast on Wachovia's outstanding common and preferred stock and consummated on 31 December 2008. *Id.* The trial court entered an order granting preliminary approval of the settlement and certifying the action as a non-opt out class action, naming Plaintiff as the class representative, Wolf Popper (a New York law firm) as Plaintiff's lead counsel, and Greg Jones & Associates, P.A. ("Jones") as Plaintiff's local counsel. *Id.* at 68, 717 S.E.2d at 17.

On 20 August 2009, the trial court held a fairness hearing on the proposed settlement and heard from various parties who objected to the settlement, including Objectors. On 5 February 2010, the court entered an order approving the settlement and awarding class counsel $932,621.98 in attorneys' fees.

Objectors appealed from this order, and in *Ehrenhaus I*, we affirmed the trial court's approval of the settlement but vacated the award of attorneys' fees. We remanded the case to the trial court for additional findings of fact and conclusions of law concerning the reasonableness of the attorneys' fee award, explaining that the lack of findings on this issue in the 5 February 2010 order prevented us from conducting meaningful appellate review of the fee award. *Id.* at 96, 717 S.E.2d at 33. Objectors filed a petition for discretionary review, which our Supreme Court denied on 12 December 2012. *See Ehrenhaus I*, 366 N.C. 420, 735 S.E.2d 332 (2012).

On remand, Plaintiff's counsel submitted a renewed fee application to the trial court seeking $1,500,000.00 in attorneys' fees and expenses. Defendants and Objectors filed responses to Plaintiff's fee application, and the trial court held a hearing on the matter on 6 August 2013.

On 25 March 2014, Judge Murphy entered an order ("Judge Murphy's Order") containing a determination that an award of attorneys' fees was legally permissible in this case because the parties had "amicably settled the case" and Defendants had agreed in the settlement to pay the attorneys' fees and expenses of class counsel. Judge Murphy then engaged in a reasonableness analysis regarding the appropriate amount of fees and expenses to be awarded, applying the factors articulated in Rule 1.5 of the North Carolina Rules of Professional Conduct. Based on his analysis of these factors, Judge Murphy awarded $1,056,067.57 in attorneys' fees and expenses

to Wolf Popper. However, Judge Murphy also ruled that despite the existence of a valid fee-sharing agreement between Wolf Popper and Jones, the absence of evidence as to "the time expended, the rate charged, or the expenses incurred by Greg Jones in prosecuting this action as local counsel" rendered the court "unable to determine whether any division of fees with Greg Jones is reasonable." For this reason, Judge Murphy did not award any portion of the attorneys' fees to Jones.

Objectors have now once again appealed to this Court, asserting that there was no valid legal basis for an award of attorneys' fees in this case and that Judge Murphy's award must therefore be vacated. Plaintiff filed an electronic notice of appeal with the North Carolina Business Court in an attempt to cross-appeal from the portions of Judge Murphy's Order (1) awarding a lesser amount of attorneys' fees than Plaintiff had requested based on the trial court's conclusion that the application of a contingency multiplier was inappropriate; and (2) declining to award any attorneys' fees to Jones. Plaintiff later filed a written notice of appeal in Mecklenburg County Superior Court as required by the North Carolina Rules of Appellate Procedure, but this notice was untimely. Consequently, Judge James L. Gale dismissed Plaintiff's appeal in an order entered 16 July 2014 ("Judge Gale's Order"). On 1 August 2014, Plaintiff filed a notice of appeal from Judge Gale's Order dismissing his appeal.

**Analysis**

As discussed above, two separate appeals are currently before us. In COA14-1201, Objectors appeal from Judge Murphy's Order, arguing that there was no valid legal basis for an award of attorneys' fees in this case. In COA14-1083, Plaintiff appeals from Judge Gale's Order, which dismissed his attempted cross-appeal from Judge Murphy's Order because it was untimely. We address each of the parties' respective appeals in turn.

## I. Objectors' Appeal (COA14-1201)

Objectors argue that there was no "legally cognizable basis to support the fee award contemplated by the settlement." For the reasons discussed below, we reject their argument on this issue.

### A. *Ehrenhaus I*

In order to address Objectors' contentions in the present appeal, it is appropriate to review our prior decision in *Ehrenhaus I*. In *Ehrenhaus I*, Objectors made "four general arguments on appeal: (1) the trial court should have enjoined the Merger; (2) the trial court erred in certifying the Class; (3) the trial court erred in approving the Settlement; and (4) the trial court failed to consider critical evidence." *Ehrenhaus I*, 216 N.C. App. at 69, 717 S.E.2d at 17. In our opinion, we rejected the majority of Objectors' contentions, holding that the trial court neither erred in certifying the class nor in approving the challenged portions of the settlement. *Id.* at 82-93, 717 S.E.2d at 25-32.

Specifically, we held that the trial court's certification of the class action was proper because (1) the court conducted a sufficient inquiry into Plaintiff's qualifications to serve as class representative and Plaintiff was capable of adequately and fairly representing the interests of the class; (2) Plaintiff's counsel was capable of acting as class counsel based on their proficiency in litigating class action suits; and (3) the trial court's decision to certify the class as a non-opt-out class did not violate the procedural due process guarantees provided by the Constitution. *Id.* at 76-82, 717 S.E.2d at 20-25. With regard to Objectors' challenges to the settlement agreement, we concluded that the trial court correctly determined the terms were fair and reasonable based on a consideration of Plaintiff's likelihood of success, the benefits conferred upon the class, the sufficiency of the notice provided to the class concerning the terms of the settlement, and the "muted" reaction of the class to the settlement terms (as there were only two remaining objectors to the settlement at the time of the hearing). *Id.* at 92-93, 717 S.E.2d at 31-32.

However, with respect to the award of attorneys' fees, we concluded that the trial court's bare conclusion that Plaintiff's counsel would be awarded "$932,621.98 in attorney fees and expenses for the representation of the Class in this action. . . . in accordance with the terms of the Stipulation [of settlement]" was insufficient to support an award of legal fees. We determined that the trial court's lack of findings and conclusions regarding both the legal basis for the fee award and the

reasonableness of the amount awarded left us "unable to adequately review the decision of the trial court . . . on the issue of attorney's fees." *Id.* at 96, 717 S.E.2d at 33. As a result, we "vacate[d] that portion of the court's order" and remanded for the trial court to (1) articulate the legal basis for any fee it chose to award; and (2) analyze the reasonableness of any such award by considering the factors set out in Rule 1.5 of the North Carolina Rules of Professional Conduct. *Id.* We summarized the trial court's task on remand by means of the following specific directive:

> While the trial court's analysis did partially complete its task, it did not finish the task of reviewing the necessary evidence to make its decision. On remand, we trust the trial court to examine additional evidence and to make the appropriate findings of fact and conclusions of law, including a reasoned decision on the issue of how it arrived at the figure to be awarded.

*Id.* at 99, 717 S.E.2d at 35. In conformity with our instructions in *Ehrenhaus I*, Judge Murphy entered the 25 March 2014 order that forms the basis of Objectors' present appeal.

### B. Judge Murphy's Order

In accordance with our directions on remand, Judge Murphy held a new hearing, examined additional evidence regarding the legal fees and expenses incurred during the litigation, and entered an order (1) determining that an award of attorneys' fees in this case was legally permissible; and (2) concluding that an award of $1,056,067.57 in legal fees and expenses was reasonable based on his consideration

of each of the eight factors articulated in Rule 1.5 of the North Carolina Rules of Professional Conduct.

Regarding the legal basis of the attorneys' fee award, Judge Murphy noted in his order that the "American Rule" precludes an award of attorneys' fees to the party who prevails in litigation from the non-prevailing party. He then reasoned that "the scope of the American Rule [does not] reach cases such as this, where the parties have amicably reached an agreement *during the course of litigation* that one party will pay the attorney's fees and expenses of the other and neither party is a 'successful' litigant." Ruling that an award of attorneys' fees in this case was therefore legally permissible, he concluded that "the Court's sole directive, going forward, is to determine whether Plaintiff's attorney's fee award request of $1.5 million is reasonable in light of Rule 1.5 . . . ."

Judge Murphy then made detailed findings of fact addressing the Rule 1.5 factors, determining that (1) Wolf Popper spent 3,328.70 hours in representing Plaintiff in this case and that "prosecution of this action required an extensive amount of attorney time and labor, and the novel and complex nature of the issues involved required legal counsel to possess a high level of skill"; (2) representing Plaintiff in this action likely precluded Wolf Popper from other employment; (3) Wolf Popper's hourly rates are similar to those charged by a comparable North Carolina law firm and are not excessive; (4) Wolf Popper obtained a "highly favorable" result

for the class members because it "ensured the Class would receive a more-detailed proxy statement regarding the Wachovia-Wells Fargo Merger and effectively extinguished the tail provision, allowing the shareholders to cast informed votes on the Merger and protect their interests"; (5) the circumstances of the case — particularly, the fact that there was a "narrow window of time available to Wachovia to exercise a viable option for the benefit of the company and its shareholders" — imposed stringent time limitations on Plaintiff's counsel; (6) "the nature of the professional relationship between Plaintiff and his counsel was complex and expansive" due to the complexity of the litigation and the large number of class members; (7) the attorneys employed by Wolf Popper were experienced in class action litigation and "were well suited to perform the services required of counsel in a complex case such as this"; and (8) in determining the proper amount of attorneys' fees to award, (a) the use of a contingency multiplier as requested by Plaintiff's counsel in the calculation of the fee award was inappropriate, and (b) after considering the factors set forth in Rule 1.5, an award of $1,012,326.00 in attorneys' fees was reasonable.

Judge Murphy also determined that the legal expenses incurred in prosecuting the class action totaling $43,741.57 were not excessive and should be part of the attorneys' fee award, thereby concluding that a total award of $1,056,067.57, inclusive of both attorneys' fees and expenses, was appropriate. Finally, with regard

to the division of fees between Wolf Popper and Jones, he concluded that although "a valid fee-sharing agreement" existed between the two firms, the absence of documentation in the record as to Jones' rates, time expended, and expenses incurred in connection with this litigation made it unfeasible to conduct "a proper analysis regarding the services rendered by Greg Jones to Plaintiff." The trial court thus awarded no portion of the fees to Jones because it was unable to determine whether the division of fees between him and Wolf Popper was reasonable.

### C. Objectors' Arguments

#### 1. Legal Basis for Award of Attorneys' Fees

The primary argument asserted by Objectors in this appeal is that no legal basis existed under North Carolina law for an award of attorneys' fees in these circumstances. Objectors contend that the only basis upon which attorneys' fees may properly be awarded in a class action in this State is through the application of the "common fund" doctrine. Under the common fund doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Taylor v. City of Lenoir*, 148 N.C. App. 269, 275, 558 S.E.2d 242, 247 (citation and quotation marks omitted), *disc. review denied*, 355 N.C. 500, 546 S.E.2d 235 (2002).

The common fund doctrine is premised "upon the ground that where one litigant has borne the burden and expense of the litigation that has inured to the

benefit of others as well as to himself, those who have shared in its benefits should contribute to the expense." *Bailey v. State*, 348 N.C. 130, 160, 500 S.E.2d 54, 71 (1998) (citation and quotation marks omitted); *see also Taylor*, 148 N.C. App. at 275, 558 S.E.2d at 247 ("[A] plaintiff's attorney may himself present a claim to compensation and reimbursement for expenses from the fund, on the theory that he has provided or preserved a benefit — the fund itself — and that the reasonable value of his services should be borne proportionally by all plaintiffs" (citation and emphasis omitted)). In North Carolina, the common fund doctrine is a well-recognized and long-standing exception to the general policy — known as the American Rule — that "attorneys' fees may not be awarded to the prevailing party without statutory authority." *Faulkenbury v. Teachers' & State Employees' Ret. Sys. of N.C.*, 345 N.C. 683, 696, 483 S.E.2d 422, 430 (1997).

However, in the present case, Plaintiff's lawsuit challenging the merger did not result in the establishment of a common fund. For this reason, this doctrine does not apply. *See Stephenson v. Bartlett*, 177 N.C. App. 239, 245, 628 S.E.2d 442, 446 (explaining that common fund doctrine "has no application . . . [where] there is no common fund resulting from the litigation"), *disc. review denied*, 360 N.C. 544, 635 S.E.2d 59 (2006).

A number of other jurisdictions recognize the "common benefit" doctrine as a second exception to the American Rule in the class action context. Under that theory,

an award of attorneys' fees to a litigant's counsel is permissible when that litigant "confers a common monetary benefit upon an ascertainable stockholder class" in a shareholder action. *In re Wachovia S'holders Litig.*, 168 N.C. App. 135, 139, 607 S.E.2d 48, 50-51 (citation omitted), *disc. review denied*, 359 N.C. 411, 613 S.E.2d 25 (2005). However, as this Court has previously recognized, North Carolina has declined to adopt this doctrine. *Id.* at 139, 607 S.E.2d at 51 (explaining that North Carolina does not recognize the common benefit doctrine); *see also Madden v. Chase*, 84 N.C. App. 289, 292, 352 S.E.2d 456, 458 (declining to adopt common benefit doctrine to permit attorneys' fee award in case involving corporate merger), *disc. review denied*, 320 N.C. 169, 358 S.E.2d 53 (1987).

Objectors assert that because (1) the common fund doctrine is the only exception to the American Rule in the context of class actions recognized under North Carolina law; and (2) that doctrine does not apply here, no legal basis existed for the trial court's award of attorneys' fees. The fatal flaw in Plaintiff's argument is that the award of attorneys' fees in this case did not trigger the operation of the American Rule because Defendants' payment of Plaintiff's attorneys' fees was provided for in a voluntary settlement between the parties.

As discussed above, the American Rule provides that "a successful litigant may not recover attorneys' fees, whether as costs or as an item of damages, unless such a recovery is expressly authorized by statute." *Stillwell Enters., Inc. v. Interstate*

*Equip. Co.*, 300 N.C. 286, 289, 266 S.E.2d 812, 814 (1980). Here, however, because the parties entered into a voluntary settlement, there was no "successful litigant." Therefore, the concerns the American Rule was intended to alleviate were not implicated. *See Crutchfield v. Marine Power Engine Co.*, 209 P.3d 295, 304 (Okla. 2009) (recognizing that rationale underlying American Rule is that "attorney fee awards against the non-prevailing party have a chilling effect on open access to the courts" and "[e]xceptions to the American Rule are usually crafted to encourage the conservation of judicial resources by promoting settlement . . . ."). Indeed, our caselaw expressly recognizes the enforceability of settlement agreements providing for the payment of one party's attorneys' fees by the other party to the lawsuit. *See Carter v. Foster*, 103 N.C. App. 110, 114-15, 404 S.E.2d 484, 487-88 (1991) (affirming trial court's award of attorneys' fees to plaintiff based on provision contained in negotiated settlement agreement providing for payment of such fees by defendants).

This Court has reasoned that giving effect to a negotiated settlement agreement providing for the payment of one party's attorneys' fees by the other party is consistent with the well-established policy of encouraging the settlement of disputes between litigants and is therefore permissible despite a lack of explicit statutory authorization for such an award. *Id.* at 117, 404 S.E.2d at 489. In *Carter*, the plaintiff made various loans totaling $150,000.00 to the defendants to support their business venture, which was ultimately unsuccessful. *Id.* at 111, 404 S.E.2d at

485. After the business venture failed, the plaintiff filed a complaint in superior court alleging that the defendants had defaulted on the loans. *Id.* at 112, 404 S.E.2d at 486. Before the matter went to trial, the parties negotiated a settlement resolving all of the plaintiff's claims against the defendants and providing that the defendants would pay the plaintiff's attorneys' fees in the amount of 15% of the principal sums due on each of the outstanding debts. *Id.* While we recognized that there was no statutory basis for awarding attorneys' fees to the plaintiff under these circumstances, we concluded that "[i]n view of long standing policy which encourages the settlement of legal disputes between the conflicting parties and the enforcement of settlement contracts, . . . the trial court did not err in awarding attorney's fees . . . ." *Id.* at 117, 404 S.E.2d at 489.

Thus, this Court has expressly recognized that "parties may, in settling disputes, agree to the payment of attorney's fees" and that the courts should uphold such settlement agreements in accordance with our duty to encourage the voluntary resolution of legal disputes by the parties to those disputes. *Id.* at 115, 404 S.E.2d at 488; *see also Forsyth Mun. Alcoholic Beverage Control Bd. v. Folds*, 117 N.C. App. 232, 238, 450 S.E.2d 498, 502 (1994) (recognizing that general rule prohibiting award of attorneys' fees in absence of statutory authority does not apply to fee-shifting provisions in settlement agreements); *Bromhal v. Stott*, 116 N.C. App. 250, 255, 447 S.E.2d 481, 484 (1994) (applying principle of law that "settlement agreements may

include provisions for attorney's fees" to separation agreement executed between husband and wife), *aff'd*, 341 N.C. 702, 462 S.E.2d 219 (1995).[2]

The present appeal is the first instance in which our Court has addressed the question of whether this doctrine is applicable in the class action context. We hold that it does, in fact, apply to settlements of class action lawsuits.

We recognize that class actions are unique. Unlike a traditional civil suit, a class action involves a group of individuals "so numerous that it is impractical to bring them all before the court." *Ehrenhaus I*, 216 N.C. App. at 70, 717 S.E.2d at 18. Adjudicating a case and resolving a dispute that affects a class of individuals who are not before the court implicates "unique due process concerns." *Id.* at 72, 717 S.E.2d at 19. Thus, while we are "generally indifferent to the nature of the parties' agreement [in non-class actions] . . . . we *are* concerned with the circumstances and terms of class action settlements." *Id.* (internal citations and quotation marks omitted and emphasis added).

For these reasons, the settlement of class actions — unlike settlements in ordinary civil actions — must be judicially approved. *See* N.C.R. Civ. P. 23(c) ("A class action shall not be dismissed or compromised without the approval of the

---

[2] We note that a federal court applying North Carolina law likewise relied upon this principle in awarding attorneys' fees based on a provision in the parties' settlement agreement. *See VF Jeanswear Ltd. P'ship v. Molina*, 320 F.Supp.2d 412, 423 (M.D.N.C. 2004) (citing *Carter* and awarding attorneys' fees based on "the well-established policy of encouraging settlement of disputes and enforcing settlement contracts").

judge."); *see also Ehrenhaus I*, 216 N.C. App. at 71, 717 S.E.2d at 18 ("Because settlements are 'compromises,' a class action [settlement] must . . . be subject to judicial review before it can be effectuated.").

In *Ehrenhaus I*, we observed that "[w]hile our business courts have reviewed class action settlements with regularity under a 'fairness, reasonable and adequacy' standard based upon persuasive authority developed by federal courts and cases from other jurisdictions, no North Carolina appellate court has specifically reviewed this standard." *Ehrenhaus I*, 216 N.C. App. at 71, 717 S.E.2d at 18. We proceeded to adopt the two-step procedure generally employed by federal courts in evaluating a class action settlement, directing trial courts (1) to analyze whether the proposed settlement is "within the range of possible approval" so as to require notification to the class of the proposed settlement; and (2) upon granting preliminary approval, to hold a fairness hearing "at which all interested parties are afforded an opportunity to be heard on the proposed settlement." *Id.* at 73, 717 S.E.2d at 19 (citations and quotation marks omitted). At the fairness hearing, the trial court "must ascertain whether the proposed settlement is fair, reasonable and adequate." *Id.* (citation and quotation marks omitted).

Objectors have failed to offer any persuasive argument as to why a trial court's ability to evaluate the fairness and reasonableness of a class action settlement does not include the concomitant ability to determine whether a provision in such a

settlement authorizing the payment of attorneys' fees is likewise fair and reasonable. As we stated in *Ehrenhaus I*, public policy considerations favor the settlement of lawsuits, and "[t]his preference for settlement applies to class actions." *Id.* at 72, 717 S.E.2d at 19. A ruling that courts may enforce settlement agreements providing for the payment of attorneys' fees by one party to another party only in non-class action lawsuits would run counter to this public policy favoring the settlement of litigation. Moreover, as discussed above, we see no valid reason for creating such a distinction.

For all of these reasons, we hold that the parties to a class action may agree to a fee-shifting provision in a negotiated settlement that is — like all other aspects of the settlement — subject to the trial court's approval in a fairness hearing. During the fairness hearing, the trial court must carefully assess the award of attorneys' fees to ensure that it is fair and reasonable. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (explaining that in assessing attorneys' fee provisions in class action settlements, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount").

### 2. Scope of Remand

Objectors also assert that Judge Murphy's Order exceeded the scope of our instructions on remand in *Ehrenhaus I*, and as a result, his 25 March 2014 order was "unauthorized and void." We disagree.

In *Ehrenhaus I*, we directed the trial court to complete its review of the evidence, articulate a legal basis for any award of attorneys' fees, and "make the appropriate findings of fact and conclusions of law . . . on the issue of how it arrived at the figure to be awarded." *Id.* at 99, 717 S.E.2d at 35. On remand, Judge Murphy did just that. In his order, he concluded that ordering Defendants to pay Plaintiff's attorneys' fees was legally permissible because — as discussed above — North Carolina law allows the judicial enforcement of settlement agreements in which, as here, the parties have agreed to a fee-shifting arrangement. Judge Murphy then engaged in an extensive reasonableness analysis before ultimately arriving at an award of $1,056,067.57 in attorneys' fees and expenses, making detailed findings regarding his consideration of each of the factors contained in Rule 1.5 as he was instructed to do in *Ehrenhaus I*. *Id.* at 96, 717 S.E.2d at 33.

Objectors offer no argument challenging the sufficiency of these reasonableness findings, and we are satisfied that Judge Murphy properly fulfilled his obligation to ensure that the award of fees was fair and reasonable. While the amount of attorneys' fees he ultimately awarded is greater than the initial award of attorneys' fees that was before us in *Ehrenhaus I*, our prior opinion implicitly recognized the probability that "the figure to be awarded" on remand would vary from the initial amount awarded given that the trial court would be reviewing additional evidence in order to determine what amount of attorneys' fees would be fair and

reasonable. *Id.* at 99, 717 S.E.2d at 35. We therefore conclude that the trial court's order did not exceed the limited scope of our remand.

## II. Plaintiff's Appeal (COA14-1083)

Plaintiff attempted to cross-appeal from Judge Murphy's Order in order to challenge the trial court's refusal to (1) allocate any portion of the attorneys' fee award to Plaintiff's local counsel; and (2) apply a contingency multiplier when calculating the amount of attorneys' fees to be awarded to Wolf Popper. However, Plaintiff did not properly give notice of appeal. Instead of filing the notice of appeal with the clerk of superior court as required by Rule 3(a) of the North Carolina Rules of Appellate Procedure, *see* N.C.R. App. P. 3(a) ("Any party entitled by law to appeal from a judgment or order of a superior . . . court rendered in a civil action . . . may take appeal by filing notice of appeal *with the clerk of superior court* and serving copies thereof upon all other parties within the time prescribed by subsection (c) of this rule." (emphasis added)), the only notice of appeal submitted by Plaintiff within the requisite time period was filed with the North Carolina Business Court using its electronic filing system.

Plaintiff later attempted to remedy his error by filing a notice of appeal with the clerk of court in Mecklenburg County Superior Court. However, this notice of appeal was not filed until 15 May 2014 and, therefore, did not fall within the ten-day window of time for filing a cross-appeal that was triggered by the filing and service

of Objectors' notice of appeal on 24 April 2014. *See* N.C.R. App. P. 3(c) ("If timely notice of appeal is filed and served by a party, any other party may file and serve a notice of appeal within ten days after the first notice of appeal was served on such a party."). Therefore, because Plaintiff failed to give proper notice of appeal within the applicable deadline, Judge Gale dismissed his appeal on 16 July 2014. Plaintiff filed a notice of appeal from Judge Gale's Order on 1 August 2014 and contends that Judge Gale erred in dismissing his appeal because Judge Gale's Order did not "properly take into consideration the particular facts of this case."

It is well established, however, that "[n]o appeal lies from an order of the trial court dismissing an appeal for failure to perfect it within apt time, the proper remedy to obtain review in such case being by petition for writ of certiorari." *State v. Evans*, 46 N.C. App. 327, 327, 264 S.E.2d 766, 767 (1980). On 10 October 2014, Defendants filed a motion to dismiss Plaintiff's appeal from Judge Gale's Order. Four days later, on 14 October 2014, Plaintiff filed a petition for writ of certiorari seeking review of Judge Gale's Order or, in the alternative, seeking "to afford Plaintiff the opportunity to appeal [Judge Murphy's] Order even if its appeal of [Judge Gale's] Order is denied."

Rule 21 of the Appellate Rules authorizes this Court to issue a writ of certiorari "in appropriate circumstances . . . to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action . . . ." N.C.R. App. P. 21(a)(1). However, "our Courts have frequently

observed that a writ of certiorari is an extraordinary remedial writ." *Branch Banking and Trust Co. v. Peacock Farm, Inc.*, ___ N.C. App. ___, ___, 772 S.E.2d 495, 500 (2015) (citation, quotation marks, and alteration omitted). In our view, the circumstances of the present case do not justify this extraordinary remedy. Indeed, Plaintiff's appellate brief and petition for writ of certiorari primarily address the alleged errors in Judge Gale's Order and offer little argument as to why the underlying decision of Judge Murphy not to award Jones a portion of the attorneys' fees constituted error. Consequently, in our discretion, we decline to grant certiorari.[3]

## Conclusion

For the reasons stated above, we (1) affirm Judge Murphy's 25 March 2014 order in COA14-1201; and (2) dismiss Plaintiff's appeal and deny his petition for certiorari in COA14-1083.

AFFIRMED IN PART; DISMISSED IN PART.

Judges STROUD and DILLON concur.

---

[3] While we express no opinion on this issue, we note that Judge Murphy's Order does not contain language expressly foreclosing the possibility of Jones ultimately being deemed entitled to receive some portion of the attorneys' fees at issue. Instead, Judge Murphy merely ruled that based upon the evidence before him at the time of his decision, he was "unable to determine whether any division of fees with Greg Jones is reasonable" and would not award a portion of the total attorneys' fee award to Jones "until such time as there is sufficient evidence before the Court to support a proper analysis regarding the services rendered by Greg Jones to Plaintiff."