Weddle v. WakeMed Health & Hosps., 2025 NCBC 71.

STATE OF NORTH CAROLINA

WAKE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
22CVS013860-910

TRACE WEDDLE, LINDA
MATTHIAE, and KIM NAUGLE, on
behalf of themselves and all others
similarly situated,

          Plaintiffs,

v.

WAKEMED HEALTH AND
HOSPITALS d/b/a WAKEMED,

          Defendant.

**ORDER AND OPINION ON MOTION
FOR FINAL APPROVAL OF CLASS-
ACTION SETTLEMENT AND
PETITION FOR ATTORNEYS' FEES**

1. Plaintiffs Trace Weddle, Linda Matthiae, and Kim Naugle have moved for final approval of a settlement of this class action and have filed a related petition for attorneys' fees and expenses. (ECF Nos. 110, 112.) Both are unopposed. For the reasons given below, the Court enters Final Judgment, **APPROVES** the proposed settlement, **DISMISSES** all class claims, and **GRANTS in part** the fee petition.

*James Scott Farrin, by Thomas M. Wilmoth and Gary W. Jackson; and CohenMalad, LLP, by Amina A. Thomas and Lynn A. Toops, for Plaintiff Trace Weddle.*

*Markovits, Stock & DeMarco, LLC, by Terence R. Coates and Jonathan T. Deters; Bryson Harris Suciu & DeMay, PLLC, by Scott C. Harris and James DeMay; and Milberg Coleman Bryson Phillips Grossman, PLLC, by Gary M. Klinger, for Plaintiff Linda Matthiae.*

*Lockridge Grindal Nauen PLLP, by Kate M. Baxter-Kauf and Maureen Kane Berg; CR Legal Team, LLP, by James Harrell and Peter H. Burke; and Bryson Harris Suciu & DeMay, PLLC, by Scott C. Harris and James DeMay, for Plaintiff Kim Naugle.*

*Alston & Bird LLP, by Matthew P. McGuire, Kristine McAlister Brown, Donald Houser, and Brandon Springer, for Defendant WakeMed Health & Hospitals.*

Conrad, Judge.

I.
BACKGROUND

2.    Plaintiffs are patients or former patients of Defendant WakeMed Health and Hospitals.  In November 2022, Plaintiffs sued WakeMed and asserted claims relating to its use of third-party tracking software on its website and patient portal.  The software is called the Meta Pixel.  "Meta" refers to Meta Platforms, Inc.—better known as the company that owns Facebook.  "Pixel" refers to software code created by Meta that can be put into a website to collect data.  According to Plaintiffs, WakeMed's use of the Pixel gave Meta unauthorized access to patients' personal and medical data for advertising and marketing purposes.  Based on these allegations, Plaintiffs asserted a variety of claims, both individually and on behalf of a putative class of similarly situated individuals.  Early motion practice narrowed these claims; the remaining claims are for negligence, breach of implied contract, and breach of fiduciary duty.  *See generally Weddle v. WakeMed Health*, 2023 NCBC LEXIS 162 (N.C. Super. Ct. Dec. 4, 2023) (dismissing certain claims).

3.    In early 2025, the parties reached a settlement of all individual and class claims.  The key terms of the settlement are straightforward.  WakeMed agreed to pay $2,450,000 into a non-reversionary settlement fund.  A third of that amount is allocated to the fees and expenses of class counsel (subject to judicial approval), and a smaller portion is allocated to administration costs.  After those deductions, the remaining funds are available to pay class members a pro rata amount.  Although class members must submit a claim to receive payment, no evidence of loss is required

to substantiate a claim. In return, class members who do not opt out of the settlement release their claims.

4. Plaintiffs moved for preliminary approval of the settlement agreement and conditional class certification in April 2025. (ECF No. 101.) The Court entered an order that (1) preliminarily approved the settlement agreement; (2) conditionally certified the settlement class; (3) approved the claims process and directed that notice be given to putative class members; (4) set a schedule for submission of a motion for final settlement approval and of any objections; and (5) scheduled a hearing to determine the fairness, reasonableness, and adequacy of the settlement terms. (*See* ECF No. 105.)

5. In keeping with the Court's preliminary approval, the settlement administrator sent notice by mail and, when possible, by e-mail to almost 500,000 putative class members. As in any situation like this, some mailings were returned undeliverable, and some e-mails were rejected. The administrator used forwarding addresses and other investigative means to make as many second attempts as possible. Through these efforts, the administrator estimates having reached 97% of the class. (*See generally* ECF No. 115.)

6. In July 2025, Plaintiffs filed a motion for an award of attorneys' fees, reimbursement of litigation expenses, and class representative service awards. (ECF No. 110.) Two months later, Plaintiffs timely filed their motion for final approval of the settlement. (ECF No. 112.)

7.      The Court held a fairness hearing on 16 October 2025, at which counsel for Plaintiffs and WakeMed appeared.  No member of the proposed class attended the hearing.  The parties' submissions show that sixteen class members opted out of the settlement and just one objected.  (*See* ECF No. 113.3.)  Following the hearing, the Court entered an order calling for additional information related to the requested attorneys' fees and litigation expenses.  Now that Plaintiffs have timely filed this additional information, the motions are ripe.  (*See* ECF Nos. 116, 117, 117.1–117.6.)

II.
CLASS CERTIFICATION AND SETTLEMENT APPROVAL

8.      "The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citation and quotation marks omitted).  Because a class-action settlement binds individuals who have not appeared in the litigation, it "raises unique due process concerns" and requires "court approval."  *Ehrenhaus v. Baker*, 216 N.C. App. 59, 72 (2011) ("*Ehrenhaus I*").  In their motion, and with WakeMed's consent, Plaintiffs contend that the proposed settlement is fair, reasonable, and adequate.  They ask the Court to approve it and certify a settlement class.

9.      **Class Certification.**  Rule 23 of the North Carolina Rules of Civil Procedure governs class certification.  Under that rule, a court may certify a class action if the following requirements are met:

> (1) the existence of a class, (2) the named representative will fairly and adequately represent the interests of all class members, (3) there is no conflict of interest between the representative and class members, (4) class members outside the jurisdiction will be adequately represented, (5) the named party has a genuine personal interest in the outcome of the litigation, (6) class members are so numerous that it is

impractical to bring them all before the court, and (7) adequate notice of the class action is given to class members.

*Chambers v. Moses H. Cone Mem. Hosp.*, 2022 NCBC LEXIS 122, at *5 (N.C. Super. Ct. Oct. 19, 2022); *accord Moss v. Towell*, 2018 NCBC LEXIS 20, at *6–7 (N.C. Super. Ct. Mar. 6, 2018); *In re PokerTek Merger Litig.*, 2015 NCBC LEXIS 10, at *9 (N.C. Super. Ct. Jan. 22, 2015); *see also* N.C. R. Civ. P. 23. In short, a certifiable class exists "when the named and unnamed members each have an interest in either the same issue of law or of fact, and that issue predominates over issues affecting only individual class members." *Crow v. Citicorp Acceptance Co.*, 319 N.C. 274, 280 (1987).

10. Having considered all matters of record, the Court concludes that the requirements of Rule 23 have been met and that certification of the settlement class is appropriate.

11. The Court finds that Plaintiffs and their counsel fairly and adequately represented the interests of all class members and that there is no conflict of interest between Plaintiffs and the class members. In addition, Plaintiffs' claims are typical of claims of the putative class, and their interests were not merely technical; each class representative had a clear stake and genuine personal interest in the controversy. Given that the proposed class includes almost 500,000 former and current patients of WakeMed, it would be impractical to bring them before the Court. Thus, a class action is superior to other available methods for the fair and efficient adjudication of this controversy, and individual litigation would be largely duplicative and "consume large amounts of resources and time of the Court and the parties." *In re Novant Health, Inc.*, 2024 U.S. Dist. LEXIS 107949, at *16 (M.D.N.C. 2024)

(certifying settlement class in case involving similar allegations of healthcare institution's disclosure of patient information through Meta Pixel).

12. The Court also finds that the class members received fair and adequate notice. The settlement administrator gave notice in accordance with the order granting preliminary approval of the settlement, and the notice fairly, accurately, and reasonably informed members of the settlement class of their rights and of the consideration they were to receive. Considering the large number of class members involved, the Court determines that the form and manner of the notice is the best notice practicable and satisfies due process. Indeed, the record tends to show that the settlement administrator reached over ninety-seven percent of class members, well above national norms in class-action litigation. In these circumstances, the Court determines that it does not violate due process to include those class members who did not receive actual notice because of mailings returned as undeliverable. *See Hamilton v. Memorex Telex Corp.*, 118 N.C. App. 1, 14 (1995) (holding that the trial court did not err in including class members whose notices were returned undeliverable).

13. Accordingly, the Court certifies the following class for settlement purposes only (with terms as defined in the preliminary-approval order, (ECF No. 105)): "All individuals who reside in the United States who were sent notice by WakeMed of the Pixel Incident as identified in the Class List." The class excludes (i) WakeMed, any entity in which WakeMed has a controlling interest, and WakeMed's officers, directors, legal representatives, successors, subsidiaries, and assigns; (ii) any judge,

justice, or judicial officer presiding over this action and the members of their immediate families and judicial staff; and (iii) any individual who timely and validly opts out of the settlement.

14. Finally, the Court confirms its appointment of Trace Weddle, Linda Matthiae, and Kim Naugle as class representatives. The Court also confirms its appointment of the following individuals as class counsel: James DeMay and Scott Harris of Bryson Harris Suciu & DeMay, PLLC; Gary Jackson and Thomas Wilmoth of James Scott Farrin; Kate Baxter-Kauf and Maureen Berg of Lockridge Grindal Nauen PLLP; Terence Coates and Jonathan Deters of Markovits, Stock & De Marco, LLC; Amina Thomas and Lynn Toops of Cohen & Malad, LLP; and Peter Burke and James Farrell of CR Legal Team, LLP. And the Court grants final approval of Kroll Settlement Administration as the settlement administrator.

15. **Settlement Approval.** "[P]ublic policy considerations favor the settlement of lawsuits," including class actions. *Ehrenhaus v. Baker*, 243 N.C. App. 17, 30 (2015) ("*Ehrenhaus II*"). North Carolina courts tend to approve class-action settlements if "the settlement terms are fair, reasonable, and adequate" and so long as "there has been fair notice" and "an opportunity for class members to object." *In re Krispy Kreme Doughnuts S'holder Litig.*, 2018 NCBC LEXIS 1, at *12 (N.C. Super. Ct. Jan. 2, 2018). To determine whether a proposed settlement is fair, reasonable, and adequate, the Court considers many factors, including the following:

> (a) the strength of the plaintiff's case, (b) the defendant's ability to pay, (c) the complexity and cost of further litigation, (d) the amount of opposition to the settlement, (e) class members' reaction to the proposed

settlement, (f) counsel's opinions, and (g) the stage of proceedings and how much discovery has been completed.

*Chambers*, 2022 NCBC LEXIS 122, at \*8 (quoting *In re Newbridge Bancorp S'holder Litig.*, 2016 NCBC LEXIS 91, at \*21–22 (N.C. Super. Ct. Nov. 22, 2016)).

16.     Having considered these factors in light of the record, the Court finds the settlement to be fair, reasonable, adequate, and in the best interest of the class.

17.     This litigation is entering its fourth year.  Counsel on both sides are highly skilled with experience in data-privacy cases and class-action litigation more generally.  WakeMed resolutely disputes not only the factual allegations in the amended complaint but also Plaintiffs' legal theories.  Indeed, before negotiating their settlement, the parties briefed and argued substantive issues, engaged in extensive discovery, and conducted a good-faith but unsuccessful mediation.  There is no doubt that, absent a settlement, the parties would spend considerable time and resources contesting class certification and summary judgment (not to mention, if necessary, a long and complex trial).

18.     The class members' reaction to the settlement was overwhelmingly positive. Of the nearly 500,000 class members, only sixteen opted out.  And only one objected. The absence of any significant opposition to the settlement heavily favors approval. This is especially so given the settlement administrator's extraordinarily successful notice campaign and the remarkably high rate at which class members submitted claim forms to accept a pro rata portion of the settlement fund.  *See Ehrenhaus I*, 216 N.C. App. at 74 ("[T]he reaction of the class to the settlement is perhaps the most

significant factor to be weighed in considering its adequacy." (citation and quotation marks omitted)).

19. Having reviewed the sole objection, the Court overrules it. In a nutshell, the objector asserts that he has suffered "financial loss" and complains that the "total compensation for each of the victims" is too low. (ECF No. 113.3.) But the objector presents no evidence to quantify his own personal loss. And in any event, the question is whether the settlement is fair and adequate, "not whether the class member could have received a better deal in exchange for the release of their claims." *Rosado v. eBay Inc.*, 2016 U.S. Dist. LEXIS 80760, at *28 (N.D. Cal. June 21, 2016). "If the objector believes that he has suffered damages that are significantly higher than the typical class member, he should opt out of the class and separately pursue his claims." *Id.*

20. The objector also contends that any settlement should include "personal identity and medical data theft insurance coverage for five years." (ECF No. 113.3.) It is true that data breaches often increase the risk of identity theft. *See, e.g.*, *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 156 (3d Cir. 2022) (discussing data-breach allegations in which a third party stole "sensitive employee information" and "publish[ed] it on the Dark Web," thereby increasing "the risk of identity theft or fraud"). This case is better labeled as a data-privacy case as opposed to a data-breach case, however. There is no allegation that Meta used the Pixel to steal patient data for the purpose of selling it to nefarious actors in the darker corners of cyberspace. Nor is there any allegation that the information conveyed through the Pixel is the

type of information that could be used to steal one's identity. Class members may well have suffered a privacy-related injury but not one that carries a high risk of identity theft. Thus, identity-theft protection would offer minimal remedial benefit and would come at great expense, potentially consuming the settlement fund. The objection is overruled.

21. The settlement fund is substantial: $2,450,000, minus fees and expenses. Each member who has submitted a claim will receive a nontrivial, pro rata share of this fund. Whether Plaintiffs could have achieved a similar or better result by seeing their claims through to the finish line is highly uncertain. Having considered the claims and defenses, the case's overall complexity, the odds that WakeMed would successfully defend itself, and the length of time needed to obtain a final judgment through one or more trials and appeals, the Court finds that class counsel's decision to settle the case on these terms is reasonable and prudent. *See Ehrenhaus I*, 216 N.C. App. at 93 ("[T]he opinion of experienced and informed counsel is entitled to considerable weight." (citation and quotation marks omitted)).

22. Additionally, it is clear, and the Court concludes, that the settlement is a result of arms-length negotiations between the parties and is not the product of collusion.

23. For all these reasons, the settlement is fair, reasonable, and adequate, and it is in the best interest of the class. The Court therefore grants the motion to approve the settlement. Having done so, the Court turns to the motion for an award of attorneys' fees for class counsel and service awards for the class representatives.

## III.
## FEE PETITION

24.     As part of the settlement agreement, class counsel are to receive one-third of the settlement fund plus reimbursement of expenses, and each class representative is to receive $2,500.  (*See* ECF No. 103.2.)  The parties ask that the court approve these amounts.

25.     The North Carolina Court of Appeals has held that "parties to a class action may agree to a fee-shifting provision in a negotiated settlement that is—like all other aspects of the settlement—subject to the trial court's approval in a fairness hearing." *Ehrenhaus II*, 243 N.C. App. at 30.  The trial court must "carefully assess the award of attorneys' fees to ensure that it is fair and reasonable." *Id.*

26.     The reasonableness of a fee request does not turn solely on the percentage of the settlement fund that it would consume.  "Rather, this court has routinely adopted a multiple factor or hybrid approach to determining attorney fees which uses both the percentage of the fund method and the lodestar method in combination with a careful consideration of the fee factors set forth in the Rules of Professional Conduct of the North Carolina State Bar." *Williams v. Monarch*, 2024 NCBC LEXIS 101, at *3 (N.C. Super. Ct. Aug. 2, 2024) (citation and quotations omitted) (collecting cases). Relevant factors include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) The fee customarily charged in the locality for similar legal services;

(4) The amount involved and the results obtained;

(5) The time limitations imposed by the client or by the circumstances;

(6) The nature and length of the professional relationship with the client;

(7) The experience, reputation, and ability of the lawyer or lawyers performing the service; and

(8) Whether the fee is fixed or contingent.

N.C. Rev. R. Pro. Conduct 1.5(a); *see also Ehrenhaus I*, 216 N.C. App. at 96–97.

27. Several factors favor a substantial award. First, by its nature, this case required skilled counsel with experience in complex class-action litigation. Data-privacy cases are "particularly risky, expensive, and complex." *Gordon v. Chipotle Mexican Grill, Inc.*, 2019 U.S. Dist. LEXIS 215430, at *3 (D. Colo. Dec. 16, 2019). Indeed, as one federal court noted in a similar case, "[u]nauthorized data disclosures and data tracking lawsuits present questions of law that are novel and injuries that are challenging to quantify." *In re Novant Health*, 2024 U.S. Dist. LEXIS 107949, at *27; *see also McManus v. Gerald O. Dry, P.A*, 2023 NCBC LEXIS 69, at *4 (N.C. Super. Ct. May 5, 2023) (discussing "rapidly evolving legal questions of digital security, data breaches, and digital privacy, which are at the cutting edge of the interplay between new technology and the law").

28. In addition, Plaintiffs' counsel undertook this representation with no assurance of payment, advancing over $30,000 in expenses. And after several years

of litigation, they obtained tangible results for the class, prompting few opt outs and only one objection.

29. Moreover, it took a great deal of time and effort to achieve these results. As noted above, this litigation is entering its fourth year. In that time, Plaintiffs' counsel spent 1,083.5 hours on a range of legal matters, including preparing two complaints, defending against two motions to dismiss, engaging in discovery, and more. This total does not include any time devoted to the pending motions for final approval of the settlement and an award of fees. (*See* ECF Nos. 117.1–117.6.) The Court finds that the time expended was reasonable in light of the length and complex nature of this litigation.

30. But the record does not establish that the rates charged by Plaintiffs' counsel are reasonable when compared with customary rates for similar services in this State. There were as many as thirty-four timekeepers. For attorneys, the lowest hourly rate was $450, and the highest was $995. (Paralegal rates were far less, of course.) Missing from the record, though, is evidence to show how these hourly rates compare with local "rates in the geographic area of the litigation" (that is, North Carolina). *GE Betz, Inc. v. Conrad*, 231 N.C. App. 214, 244 (2013). Recent decisions of this Court have approved hourly rates at or above $700 for senior litigation partners. *See, e.g.*, *Williams*, 2024 NCBC LEXIS 101, at *10. Here, Plaintiffs' counsel have requested an award with a *blended* hourly rate over $750, taking into account both senior and junior lawyers. Absent sufficient evidence to show that these rates are customary for

this type of litigation in North Carolina, the Court concludes that the stated rates are not reasonable. This factor therefore favors a reduction in the requested award.

31. Having considered all these factors, the Court concludes that an award of $750,000 in attorneys' fees is appropriate. This amount is more than thirty percent of the settlement fund and is adequate to compensate counsel for their skilled representation, the amount of work involved, and the results obtained on behalf of the class.

32. Plaintiffs' counsel also request reimbursement of $31,325.09 in litigation expenses. The Court has reviewed Plaintiffs' supplemental filings and concludes that these expenses are reasonable and necessary litigation expenses, primarily related to mediation, filing fees, and travel costs. (ECF Nos. 117.1–117.6.)

33. Finally, the settlement agreement calls for a service award of $2,500 for each named Plaintiff. This amount is reasonable and appropriate. *See, e.g.*, *Williams*, 2024 NCBC LEXIS 101, at *15 (approving $2,500 service award).

IV.
CONCLUSION

34. For all these reasons, the Court **GRANTS** the motion for final approval of the parties' settlement agreement:

a. The Court **CERTIFIES** the class, as defined above, for purposes of the settlement only.

b. Based on the findings and conclusions above, the Court finds that the settlement is fair, reasonable, adequate, and in the best interest of the

settlement class. The Court therefore **APPROVES** the settlement with adjustments detailed above.

c. The parties are authorized and directed to comply with and to consummate the settlement in accordance with its terms and provisions, including those terms effectuating the release of claims, and the Clerk is directed to enter and docket this Order as a Final Judgment in this action.

d. Nothing in this Order and Final Judgment shall be construed, deemed, or offered as an admission by any of the parties, or by any member of the settlement class, for any purposes in any judicial or administrative action or proceeding, whether in law or in equity.

e. The action is **DISMISSED WITH PREJUDICE** in its entirety on the merits, and except as provided in the settlement, without fees, costs, and expenses beyond those approved herein. Without affecting the finality of this Order and Final Judgment, the Court retains continuing jurisdiction over all parties to the settlement for the purpose of construing, enforcing, and administering this Order and Final Judgment.

35. In addition, the Court **GRANTS in part** Plaintiffs' petition for attorneys' fees and expenses. The Court **AWARDS** Plaintiffs' counsel $750,000 in reasonable attorneys' fees and $31,325.09 in reasonable and necessary expenses. The Court also

**AWARDS** Plaintiffs Trace Weddle, Linda Matthiae, and Kim Naugle $2,500 each as a reasonable service award.

**SO ORDERED**, this the 17th day of November, 2025.

           /s/ Adam M. Conrad
           Adam M. Conrad
           Special Superior Court Judge
             for Complex Business Cases