Moss v. Towell, 2018 NCBC 65.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 11038

JOHN MOSS, on Behalf of Himself and
All Others Similarly Situated,

        Plaintiff,

    v.

JOSEPH H. TOWELL; SCOTT M.
CUSTER; J. ADAM ABRAM;
MICHAEL S. ALBERT; DAVID S.
BRODY; HARRY M. DAVIS; BARRY Z.
DODSON; THOMAS J. HALL;
THIERRY F. HO; STEVEN J.
LERNER; MICHAEL S. PATTERSON;
MARY E. RITTLING; HARRY C.
SPELL; RICHARD A. URQUHART III;
NICOLAS D. ZERBIB; and F.N.B.
CORPORATION,

        Defendants,

    and

YADKIN FINANCIAL
CORPORATION,

        Nominal Defendant.

**ORDER & OPINION ON PLAINTIFF'S
MOTION FOR APPROVAL OF
ATTORNEYS' FEES AND EXPENSES**

1.      THIS MATTER is before the Court on Plaintiff's Motion for Approval of

Attorneys' Fees and Expenses ("Motion"). For the reasons discussed below, the Court

GRANTS in part and DENIES in part the Motion.

*Rigrodsky & Long, P.A., by Seth D. Rigrodsky (pro hac vice), Brian D.
Long (pro hac vice), and Jeremy J. Riley (pro hac vice), and The Law
Offices of James Scott Farrin, by Gary W. Jackson for Plaintiff John E.
Moss.*

*Reed Smith LLP, by Roy W. Arnold (pro hac vice), and Smith Moore*

*Leatherwood LLP, by Robert M. Marcus for Defendant F.N.B. Corporation.*

*Skadden, Arps, Slate, Meagher & Flom LLP, by Paul J. Lockwood (pro hac vice), Joseph O. Larkin (pro hac vice), and Alyssa S. O'Connell (pro hac vice), and Moore & Van Allen PLLC, by Mark A. Nebrig for Defendants Yadkin Financial Corporation, Joseph H. Towell, Scott M. Custer, J. Adam Abram, Michael S. Albert, David S. Brody, Harry M. Davis, Barry Z. Dodson, Thomas J. Hall, Thierry F. Ho, Steven J. Lerner, Michael S. Patterson, Mary E. Rittling, Harry C. Spell, Richard A. Urquhart III, and Nicolas D. Zerbib.*

Gale, Senior Business Court Judge.

## I.     INTRODUCTION

2.     The Court earlier approved the settlement of a class action brought to challenge a merger.  The settlement consisted solely of Defendants' submission of supplemental merger-related disclosures in exchange for a release of Plaintiff's merger-related claims.  The Court reserved its further consideration of the Motion, which seeks an award of attorneys' fees and expenses.  The Court now awards attorneys' fees, but in a lesser amount than requested, and denies the recovery of expenses.

## II.     PROCEDURAL AND FACTUAL BACKGROUND

3.     A detailed summary of the procedural and factual background of this litigation is in the Court's Order & Opinion Approving Settlement, *Moss v. Towell*, No. 16 CVS 11038, 2018 NCBC LEXIS 20, at *2–6 (N.C. Super. Ct. Mar. 6, 2018).

4.     John E. Moss ("Plaintiff") is a former owner of Yadkin Financial Corporation ("Yadkin") stock.

5.     On July 20, 2016, Yadkin entered into a merger agreement with F.N.B. Corporation ("FNB"), whereby Yadkin shareholders would receive 2.16 shares of FNB stock for each Yadkin share they owned.

6.     On August 9, 2016, pursuant to a written agreement ("Fee Agreement"), Plaintiff retained the law firm of Rigrodsky & Long, P.A. ("Lead Counsel"), who associated with The Law Offices of James Scott Farrin ("Local Counsel" and collectively with Lead Counsel, "Plaintiff's Counsel"). Rigrodsky & Long's Fee Agreement states that

> [t]he Firm will represent You on a fully contingent basis. If the action creates a benefit for [Yadkin] or its shareholders (monetary or otherwise), the Firm will seek an award of fees. In the event of a settlement, the Firm will seek to have their attorneys' fees paid by agreement with the defendants, subject to Court approval, or otherwise by application to the Court. Alternatively, defendants may agree to allocate additional monies to cover our attorneys' fees and expenses, subject to Court approval. . . . The Firm agrees to pay all costs and expenses that they deem necessary to prosecute this case.

(Aff. Brian D. Long, Esquire Supp. Mot. Pl's. Counsel Seeking Award Attorneys' Fees Expenses ("Long Aff."), ECF No. 37, Ex. C, at 2.)

7.     In September 2016, Plaintiff filed a putative class action against Yadkin, Yadkin directors, and FNB (collectively, "Defendants") asserting direct and derivative claims that the Yadkin directors breached their fiduciary duties and further that FNB aided and abetted those breaches.

8.     On November 22, 2016, Plaintiff filed a motion for a preliminary injunction, seeking to enjoin the merger until Yadkin provided supplemental merger-related disclosures.

9. On November 29, 2016, the parties entered into a memorandum of understanding ("MOU"), which memorialized the parties' agreement to resolve the litigation.

10. On November 29, 2016, Yadkin filed supplemental disclosures with the SEC.

11. On December 9, 2016, Yadkin's shareholders approved the merger.

12. On October 20, 2017, the parties executed a Stipulation and Agreement of Compromise, Settlement, and Release ("Stipulation"), whereby Defendants acknowledged Plaintiff's Counsel's entitlement to reasonable attorneys' fees and expenses. The Stipulation also provided that the parties would negotiate in good faith to agree on a reasonable amount of attorneys' fees and expenses, which Defendants would pay if the Court approved. If the parties could not reach an agreement, the issue would be submitted to the Court for resolution, and Defendants would pay whatever amount of fees, costs, and expenses the Court approved. (Stipulation and Agreement of Compromise, Settlement, and Release 14–15 ("Stipulation"), ECF No. 35.1.)

13. On February 7, 2018, Plaintiff filed a Motion for Final Approval of Settlement and the Motion. Plaintiff's Counsel reported that the parties had not reached an agreement on an award and requested expenses of $4,737.86 and a fee of $295,262.14, for a total award of $300,000. Plaintiff's Counsel reported that a total of 421.45 hours had been spent on the litigation, which, if the Court calculated the fee at their normal billing rates, would equate to a lodestar of $226,842.50, or

$68,419.64 less than the fee Plaintiff's Counsel requested. (Pl's. Mem. L. Supp. Mot. Approval Attorneys' Fees Expenses 7, ECF No. 41.) Plaintiff's Counsel's fee request would yield an implied rate of $700.58 per hour ($295,262.14 divided by 421.45 hours).

14. On February 14, 2018, FNB responded to the Motion, agreeing that Plaintiff's Counsel was entitled to reasonable fees and expenses, but arguing that the requested amount was unreasonable. (FNB Corporation's Resp. Pl's. Mot. Attorney's Fees Expenses 2–3, ECF No. 44.) FNB suggested that a reasonable fee might be $134,085.00 plus $4,737.86 in expenses. (FNB Corporation's Resp. Pl's. Mot. Attorney's Fees Expenses 5.)

15. On February 28, 2018, the Court conducted the Settlement hearing. No objection had been filed and no objector appeared. At the Settlement hearing, Plaintiff's Counsel orally reduced their request for fees and expenses to a total of $200,000. The amended request yields an implied hourly rate of $463.31 per hour ($200,000 less $4,737.86 in expenses divided by 421.45 hours).

16. The Court orally indicated that it would enter a written order approving the Settlement, but reserved consideration of the request for fees and expenses. The Court raised the question whether the Fee Agreement complies with Rules 1.5 and 1.8 of the Revised Rules of Professional Conduct of the North Carolina State Bar ("RPC"). At that time, the Court had under consideration a request for fees and expenses in another class settlement in which Lead Counsel are also counsel of record. *In re Krispy Kreme Doughnuts, Inc. S'holder Litig.*, No. 16 CVS 3669, 2018

NCBC LEXIS 61, at *1 (N.C. Super. Ct. June 20, 2018) ("*Krispy Kreme II*"). The Court then allowed supplemental briefing on the RPC issues in both cases.

17. On April 9, 2018, Lead Counsel submitted a supplemental brief addressing the RPC issues.

18. The Motion is ripe for resolution.

## III. ANALYSIS

### A. The Court May Award Attorneys' Fees and Expenses Pursuant to a Fee-Shifting Provision in a Class-Action Settlement Agreement.

19. As this Court recently recognized in *Krispy Kreme II*, attorneys' fees are generally not recoverable absent statutory authority, 2018 NCBC LEXIS 61, at *10 (citing *Stillwell Enters., Inc. v. Interstate Equip. Co.*, 300 N.C. 286, 289, 266 S.E.2d 812, 814–15 (1980)), but "parties to a class action may agree to a fee-shifting provision in a negotiated settlement that is . . . subject to the trial court's approval." *Ehrenhaus v. Baker*, 243 N.C. App. 17, 30, 776 S.E.2d 699, 708 (2015); *see also Krispy Kreme II*, 2018 NCBC LEXIS 61, at *11–13 (citing prior orders of this Court allowing fees on this basis).

20. The Court must limit any award to an amount that is "fair and reasonable," *Ehrenhaus*, 234 N.C. App. at 30, 776 S.E.2d at 708, assess "the materiality and value of the disclosures obtained against the amount of attorneys' fees requested," and determine whether the award comports with the factors enumerated in RPC 1.5(a). *In re Newbridge S'holder Litig.*, No. 15 CVS 9251, 2016 NCBC LEXIS 91, at *37 (N.C. Super. Ct. Nov. 22, 2016).

21.    The Court will conduct a "searching inquiry" to determine whether and in what amount to award attorneys' fees where a settlement includes a class release in exchange for supplemental disclosures without a monetary award. *Krispy Kreme II*, 2018 NCBC LEXIS 61, at *12.  That inquiry is necessarily case-specific.

**B.    RPC 1.5(a) Favors an Award of Reasonable Attorneys' Fees.**

22.    RPC 1.5(a) states that

> [a] lawyer shall not make an agreement for, charge, or collect an illegal or clearly excessive fee or charge or collect a clearly excessive amount for expenses. The factors to be considered in determining whether a fee is clearly excessive include the following: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

N.C. Rev. R. Prof. Conduct 1.5(a).

23.    In *Krispy Kreme II,* the Court recently concluded that it should consider the time spent up to and including the filing of a motion for settlement approval. 2018 NCBC LEXIS 61, at *13–14.  The Court reaches the same conclusion here.  The time spent up to and including the filing of the Motion is 421.45 hours.  (Pl's. Mem. L. Supp. Mot. Approval Attorneys' Fees Expenses 7.)

24.    The Court must eliminate any unnecessary or excessive time spent that is included within that total. *Krispy Kreme II*, 2018 NCBC LEXIS 61, at *14–16.  The reported hours were for efforts that the Court finds necessary and appropriate,

including: researching and drafting a complaint, drafting a motion for expedited discovery, drafting a motion for a preliminary injunction, conducting two depositions, and effectuating the Settlement. Each of these efforts was appropriate in light of the nature of litigation. *See* N.C. Rev. R. Prof. Conduct 1.5(a)(1). However, after thoroughly examining the record and the underlying time records submitted in camera, the Court concludes that some inefficient and duplicative time should be excluded. As examples:

- Nearly a quarter of the total time spent in the entire litigation (101.24 of 421.45 hours, or 24%) concerned the taking of two depositions. (Long Aff. Ex. B.) This includes a total of 67.5 hours by one associate preparing for a single deposition. (Long Aff. Ex. B.)

- Four attorneys spent at least 34.2 hours drafting and preparing a single, seventeen-page complaint. (Long. Aff. Ex. B; Aff. Gary W. Jackson, Esquire Supp. Mot. Pl's. Counsel Seeking Award Attorneys' Fees Expenses ("Jackson Aff."), ECF No. 38, Ex. A.)

- One partner spent 18.5 hours on work described only as "review[ing] and finaliz[ing] settlement papers." (Long Aff. Ex. B.)

25. Based on this review, and exercising its discretion, the Court concludes that any award should be limited to total time spent of 350 hours. The Court made a higher percentage reduction in *Krispy Kreme*, but did so to account for duplicate efforts among multiple firms that brought multiple class action suits arising from the

same merger. *Krispy Kreme II*, 2018 NCBC LEXIS 61, at \*14–16. In contrast, Plaintiff's suit here was the sole lawsuit, avoiding similar duplication of effort.

26. The Court now examines the fee request pursuant to the RPC 1.5(a) factors. The Court finds that neither RPC 1.5(a)(2), 1.5(a)(5), nor 1.5(a)(6) weigh heavily in favor of or against a fee award, as there is nothing in the record to suggest that "the nature of this engagement precluded [Plaintiff's Counsel] from taking on other work during the brief period of this engagement." *Newbridge*, 2016 NCBC LEXIS 91, at \*41.

27. The Court considers the fee request against a lodestar calculation based on the fee customarily charged in North Carolina for similar services, N.C. Rev. R. Prof. Conduct 1.5(a)(3), even if those rates may be substantially less than fees that may be regularly quoted by out-of-state counsel. *Krispy Kreme II*, 2018 NCBC LEXIS 61, at \*16. The Court finds nothing in this record to suggest that the claims could not have been adequately and effectively prosecuted by North Carolina counsel experienced in complex litigation of this type.

28. In their brief supporting the Motion, Plaintiff's Counsel assert that their request is based on a lodestar that is a "substantial discount" from their normal billing rates. (Pl's. Mem. L. Supp. Mot. Approval Attorneys' Fees Expenses 7.) To the contrary, the Motion seeks an implied rate about 30% *above* their normal billing rates as reflected in the affidavits submitted in support of the Motion. (Pl's. Mem. L. Supp. Mot. Approval Attorneys' Fees Expenses 7 (requesting $295,262.14 in fees when Plaintiff's Counsel's "normal billing rates" would generate a lodestar of

$226,842.50).) Even the reduced revised request of $200,000 yields a "discount" from Plaintiff's Counsel's normal billing rates of only about 12% ($200,000 request compared to $226,842.50 if calculated using "normal rates"). And the revised request of $200,000 yields an implied rate of $463.31 per hour before accounting for the hours the Court has excluded as excessive ($200,000 less $4,737.86 in expenses divided by 421.45 hours). When taking into account this reduction in hours, Plaintiff Counsel's reduced request equates to an implied hourly rate of $557.89 ($200,000 less $4,737.86 in expenses divided by 350 hours).

29. This Court has in similar litigation previously recognized a range of $250 to $550 per hour for services of highly qualified North Carolina counsel. *In re Pike S'holder Litig.*, No. 14 CVS 1202, 2015 NCBC LEXIS 95, at *22–23 (N.C. Super. Ct. Oct. 5, 2015) (recognizing a range from $250 to $550); *see also In re Harris Teeter Merger Litig.*, No. 13 CVS 12579, 2014 NCBC LEXIS 47, at *24 (N.C. Super. Ct. Sept. 24, 2014) (recognizing a range from $250 to $450); *Krispy Kreme II*, 2018 NCBC LEXIS 61, at *21 (finding that $300 per hour was a reasonable rate). The Court recognizes the same range here. To the extent that North Carolina Court of Appeals' decisions are in conflict regarding whether a trial court may judicially notice a range of prevailing hourly rates, *compare Simpson v. Simpson*, 209 N.C. App. 320, 328, 703 S.E.2d 890, 895 (2011) (holding that a trial court "is permitted . . . to take judicial notice of the customary hourly rates of local attorneys performing the same services and having the same experience") *with WFC Lynnwood I LLC v. Lee of Raleigh, Inc.*, No. COA17-562, N.C. App. LEXIS 564, at *18 (June 5, 2018) (holding that "the trial

court erred by making a finding with respect to the 'customary fee for like work'" absent an affidavit describing comparable local rates), the Court in this case follows the line of cases that allow judicial notice of local prevailing rates. This is particularly appropriate because the Court is taking judicial notice of its own cases in which it has received affidavit testimony regarding prevailing local rates, and in light of the Court's regular monitoring of fee applications in similar cases in North Carolina and Delaware.

30.     As it determines an award within the range identified above, the Court must "assess the reasonableness of the requested fees in light of the amount involved and the results obtained." *Krispy Kreme II*, 2018 NCBC LEXIS 61, at *18; *see also* N.C. Rev. R. Prof. Conduct 1.5(a)(4).

31.     The supplemental disclosures here included "(1) disclosures relating to the background of the [m]erger and (2) disclosures relating to Yadkin's financial projections." *Moss v. Towell*, 2018 NCBC LEXIS 20, at *14. More specifically, the supplemental disclosures revealed an additional party not disclosed in the original proxy that had expressed interest, that all potentially interested parties, not just FNB, had executed non-disclosure agreements, and that three of these agreements also included "don't ask, don't waive" provisions. (Pl's. Mem. L. Supp. Mot. Final Approval Settlement 13–14, ECF No. 43; Stipulation Ex. A, at 3–4.) Although a court must be careful not to take disclosures out of context and consider the total body of information available to shareholders, the Delaware Court of Chancery has recognized supplemental disclosures of this type as particularly significant. *In re*

*Ancestry.com Inc. S'holder Litig.*, C.A. No. 7988-CS, 2012 Del. Ch. LEXIS 294 (Del. Ch. Dec. 17, 2012) (transcript). Further, the supplemental disclosures provided additional information that a shareholder may have considered material in assessing the Company's fairness opinion. *In re NPS Pharmaceuticals Stockholders Litig.*, C.A. No. 10553-VCN (Del. Ch. Feb. 18, 2016) (transcript).

32. When approving the Settlement, the Court concluded that the supplemental disclosures constituted reasonable consideration for the release such that they were not "'plainly disproportionate' to the scope of the [r]elease." *Moss*, 2018 NCBC LEXIS 20, at *18 (quoting *In re Krispy Kreme Doughnuts S'holder Litig.*, No. 16 CVS 3669, 2018 NCBC LEXIS 1, at *20 (N.C. Super. Ct. Jan. 2, 2018). In now considering the fee request, the "relevant inquiry . . . is whether the supplemental disclosures, even if sufficiently material to constitute consideration for the Settlement, are of such obvious value to justify a fee resulting in an implied rate at the high end of the range for legal services for class actions in North Carolina." *Krispy Kreme II*, 2018 NCBC LEXIS 61, at *19–20.

33. In *Krispy Kreme II,* the Court concluded that the value of the supplemental disclosures did not warrant an hourly rate at the higher end of the appropriate range and issued an award based on $300 per hour. *Id.* at *21. The Court finds that the materiality of the supplemental disclosures in this case is somewhat more apparent than those in *Krispy Kreme II*, but not so obvious to justify an award at the highest end of the range.

34.     The Court has further considered whether the contingent nature of the fee warrants an award toward the upper end of the range, N.C. Rev. R. Prof. Conduct 1.5(a)(8), but concludes that no further upward adjustment because of this factor is appropriate in this case.   Further, while the litigation required skilled counsel experienced in shareholder class actions, the Court similarly concludes that neither factor 1.5(a)(1) nor 1.5(a)(7) strongly support a further upward adjustment toward the high end of the range.  N.C. Rev. R. Prof. Conduct 1.5(a)(1) and 1.5(a)(7).

35.     Accordingly, after considering each of the RPC 1.5(a) factors, the Court, in its discretion, concludes that a fee award of $140,000 is appropriate, yielding an implied rate of $400 per hour ($140,000 fee award divided by 350 hours).  The Court finds, "based on its experience, its prior conclusions, and the conclusions of many other North Carolina courts," that $400 per hour is "well within the standard range for similar legal services in North Carolina." *Krispy Kreme II*, 2018 NCBC LEXIS 61, at *21.

36.      After examining supporting materials, the Court concludes that Plaintiff's Counsel reasonably incurred $4,737.86 in expenses.

37.     The Court now considers whether the Fee Agreement complies with the RPC, and, if not, what effect non-compliance must have on Plaintiff's Counsel's ability to recover fees and expenses.

## C.     The Fee Agreement's RPC Violations Preclude an Award of Expenses, but not Attorneys' Fees.

38.     The Court recently examined one of Lead Counsel's fee agreements in *Krispy Kreme II*.  2018 NCBC LEXIS 61, at *22–32.  Lead Counsel's fee agreement

here is identical to their agreement in *Krispy Kreme II*. The Court adopts its holding and reasoning in *Krispy Kreme II* and concludes that, although that the Fee Agreement may have violated RPC 1.5(c)'s requirement to state a percentage of recovery to accrue to Plaintiff's Counsel in the event of a monetary fund, N.C. Rev. R. Prof. Conduct 1.5(c), under *Robertson v. Steris Corp.*, 234 N.C. App. 525, 537, 760 S.E.2d 313, 321 (2014), any such RPC 1.5(c) violation concerns the form, not content, of the RPC and does not justify a forfeiture of fees. *Krispy Kreme II*, 2018 NCBC LEXIS 61, at *25.

39.     The Court further adopts its holding and reasoning in *Krispy Kreme II* and concludes that the Fee Agreement violates RPC 1.8(e)'s requirement that repayment of advanced costs be contingent upon a matter because the agreement absolves Plaintiff of all financial responsibility at the outset of litigation, *id.* at *25, *28–30, and that this violation "offends the public policy on which the rule is based." *Id.* at *31. Accordingly, Plaintiff's Counsel is barred from recovering its litigation expenses.

**D.     The Court Need not Address Plaintiff's Counsel's Alternative Request for an Award Based on *Quantum Meruit.***

40.     Plaintiff's Counsel assert that, beyond the Stipulation, the Court may alternatively award fees and expenses pursuant to *quantum meruit* via N.C. Gen. Stat. § 55-7-46. (Pl's. Mem. L. Supp. Mot. Approval Attorneys' Fees Expenses 5.) "Because the Court finds the Stipulation to be a valid contract and accepts it as the basis for the award, it need not determine whether, if the Stipulation was invalid, recovery based on *quantum meruit* would be appropriate." *Krispy Kreme II*, 2018

NCBC LEXIS 61, at *32 (citing *Robinson, Bradshaw & Hinson, P.A. v. Smith*, 129 N.C. App. 305, 315, 498 S.E.2d 841, 849 (1998)).

## IV. CONCLUSION

41. For the foregoing reasons, the Court GRANTS in part and DENIES in part the Motion. Defendants shall pay Plaintiff's Counsel a total of $140,000.00 as attorneys' fees. Plaintiff's Counsel shall not recover their expenses in the litigation.

This the 3rd day of July, 2018.

/s/ James L. Gale

James L. Gale
Senior Business Court Judge